ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
SONIA SINGH (State Bar No. 311080)
*ssingh@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Plaintiff Jerry Namba, Chapter 7
Trustee for the estate of Super98, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>SUPER98, LLC,<br><br>    Debtor. | Case No. 9:18-bk-12079-DS<br><br>Chapter 7 |
| JERRY NAMBA, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP, a California limited liability partnership,<br><br>    Defendant. | Adv. No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF, AND AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS** |

1571463.3  26891

# **TABLE OF CONTENTS**

**Page**

JURISDICTION AND VENUE ...................................................................................................1

THE PARTIES ..............................................................................................................................1

OTHER RELEVANT PERSONS AND ENTITIES .....................................................................2

GENERAL ALLEGATIONS ........................................................................................................2

  Quinn Emanuel's Representation of the Debtor in Litigation Against Delta .........................3

  The Invalid Lien Notice Sent by Quinn Emanuel to Delta in August 2017 ............................4

  The Debtor's Settlement with Delta in October 2018 .............................................................5

  The Distribution Agreement and Payment of $6 Million to Quinn Emanuel..........................6

  Payments Made to Quinn Emanuel from the Bentham Proceeds from September
    2018 through January 2019 ...............................................................................................6

CLAIMS AGAINST QUINN EMANUEL ...................................................................................7

  First Claim for Relief (Declaratory Relief – QE Lien Notice) ................................................7

  Second Claim for Relief (Avoidance and Recovery of Preferential Transfer).........................8

  Third Claim for Relief (Avoidance and Recovery of Preferential Transfers) .........................9

  Fourth Claim for Relief (Avoidance and Recovery of Postpetition Transfers).....................10

PRAYER......................................................................................................................................10

Plaintiff Jerry Namba, chapter 7 trustee for the estate of Super98, LLC, alleges as follows:

## JURISDICTION AND VENUE

1. On December 17, 2018 (the "Petition Date"), an involuntary petition for relief (the "Petition") was filed against Super98, LLC (the "Debtor") under chapter 7 of the title 11 of the United States Code (the "Code"). An *Order for Relief and Order to File Schedules, Statements and List(s)* (the "Order for Relief") was entered on February 8, 2019. The Debtor's bankruptcy case, *In re Super98, LLC* (the "Case"), has been assigned case no. 9:18-bk-12079-DS and is pending in the Northern Division of the United States Bankruptcy Court for the Central District of California (the "Court").

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 13-05 entered by the United States District Court for the Central District of California pursuant to 28 U.S.C. § 157(a). All of the claims for relief alleged in this Complaint arise under the Code, arise in the Case, and/or are related to the Case.

3. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (K) and (O). Plaintiff consents to entry of final orders and judgment by the Court.

4. Venue for this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

5. Plaintiff Jerry Namba is the duly appointed and acting chapter 7 trustee for the Debtor's bankruptcy estate. In such capacity, Mr. Namba is referred to herein as the "Trustee."

6. Defendant Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), is a limited liability partnership formed under the laws of the state of California. Quinn Emanuel has offices throughout the United States, including one in Chicago, Illinois.

### OTHER RELEVANT PERSONS AND ENTITIES

7. At all relevant times, Robert D. Hesselgesser, M.D. ("Dr. Hesselgesser") was the Debtor's Chief Executive Officer. Dr. Hesselgesser is a debtor in a separate chapter 7 bankruptcy case filed on August 31, 2017, case no. 9:17-bk-11579-DS. If necessary and appropriate to do so, the Trustee reserves the right to amend this complaint to add Dr. Hesselgesser and/or his estate as a defendant.

8. James Hesselgesser ("James") is Dr. Hesselgesser's son. At all relevant times, James was the Debtor's Senior Vice President and General Manager. At all relevant times, James resided in the state of Illinois.

9. Laurence H. Levine ("Levine") is (or at least was until October 3, 2018) James' father-in-law. Levine resides in the state of Illinois. Levine is an attorney, and conducts business under the name Laurence H. Levine Law Offices and/or Law Offices of Laurence H. Levine.

10. At all relevant times, Walter Knauss ("Knauss") was the Debtor's Chief Financial Officer. Knauss is a debtor in a separate chapter 7 bankruptcy case filed on December 10, 2019, case no. 9:19-bk-12036-MB. If necessary and appropriate to do so, the Trustee reserves the right to amend this complaint to add Knauss and/or his estate as a defendant.

11. Bentham IMF 1 LLC ("Bentham") is company that provides commercial litigation funding for litigants and law firms.

### GENERAL ALLEGATIONS

12. At all relevant times, the Debtor was in the business of developing and selling "drag reduction" products designed to improve the fuel efficiency of certain McDonnell Douglas aircraft.

13. In September 2014, the Debtor and Delta Air Lines, Inc. ("Delta") entered into a contract (the "Delta Contract"). Shortly after executing the Delta Contract, Delta issued purchase orders that required the Debtor to manufacture and deliver drag reduction systems ("Systems") to Delta on a tight schedule. The Debtor began delivering Systems to Delta in January 2015.

## Quinn Emanuel's Representation of the Debtor
## in Litigation Against Delta

14. According to the Debtor, Delta breached the Delta Contract in November 2015.

15. James enlisted the assistance of Levine (his father-in-law) to help the Debtor with respect to its dispute with Delta. Levine put the Debtor in touch with Quinn Emanuel. Pursuant to a letter agreement dated December 15, 2015, the Debtor retained Quinn Emanuel to provide legal advice prior to the filing of a lawsuit against Delta.

16. On May 12, 2016, the Debtor filed a complaint against Delta in the United States District Court for the Northern District of Georgia, case no. 1:16-cv-1535 (the "Delta Litigation"). The Debtor was principally represented in the Delta Litigation by Quinn Emanuel.

17. Pursuant to a letter agreement dated June 2, 2016, the Debtor formally retained Quinn Emanuel to represent the Debtor in the Delta Litigation. Pursuant to the agreement, Quinn Emanuel billed the Debtor each month for fees incurred on an hourly-fee basis, based upon Quinn Emanuel's normal hourly rates.

18. In or about September 2016, the Debtor defaulted on its obligation to pay Quinn Emanuel on a monthly basis. By the end of February 2017, the Debtor owed Quinn Emanuel more than $1.2 million.

19. Pursuant to a letter agreement dated April 4, 2017, the financial terms of Quinn Emanuel's engagement were modified. For work performed on and after March 1, 2017, Quinn Emanuel agreed to invoice the Debtor at a rate equal to 40% of its standard hourly rates, plus costs, and the Debtor agree to pay such amounts each month. If the Debtor was awarded or paid more than $5,785,856 in connection with the Debtor's dispute with Delta, the Debtor would pay Quinn Emanuel 160% of its standard rates for work performed on and after March 1, 2017.

20. By the end of December 2017, the Debtor owed Quinn Emanuel more than $1.8 million. Quinn Emanuel put the Debtor in touch with Bentham so that the Debtor could acquire funds from Bentham to pay Quinn Emanuel.

21. The Debtor, Bentham, and Security Finance entered into a *Litigation Funding Agreement* (the "Bentham Agreement") dated April 2, 2018. Under the Bentham Agreement, Bentham agreed to pay the Debtor $1,000,000.

22. On or about April 6, 2018, Bentham paid $1,000,000 to the Debtor by transferring that amount to Quinn Emanuel's client trust account. The $1,000,000 deposited into the client trust account is referred to herein as the "Bentham Proceeds."

23. The Debtor continued to default on its obligation to pay Quinn Emanuel's invoiced fees and costs on a monthly basis. Pursuant to a letter agreement dated June 22, 2018, the financial terms of Quinn Emanuel's engagement were modified. For work performed on and after April 1, 2018, Quinn Emanuel agreed to invoice the Debtor for costs incurred and the Debtor agreed to pay such amounts each month. If the Debtor was awarded or paid more than $5,785,856 in connection with the Debtor's dispute with Delta, the Debtor would pay Quinn Emanuel 200% of its standard rates for work performed on and after April 1, 2018.

**The Invalid Lien Notice Sent by Quinn Emanuel**

**to Delta in August 2017**

24. In July 2017, the Debtor filed a motion for summary judgment with respect to certain issues raised in the Delta Litigation. The motion was "submitted" on or about August 24, 2017. Later, the court gave notice that a hearing on the motion was set for October 20, 2017.

25. On or about August 10, 2017, Quinn Emanuel sent a letter to Delta (the "QE Lien Notice"). The QE Lien Notice stated:

> We are writing to provide Delta with notice that pursuant to 770 ILCS 5/0.01 (Illinois Attorneys Lien Act) and other statutory and legal authority, [Quinn Emanuel] has an interest in any money or property [the Debtor] recovers from Delta as a result of any claims [the Debtor] raised against Delta in [the Delta Litigation]. Accordingly, a lien on behalf of the firm shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of this notice.

1571463.3  26891                                4

26. The QE Lien Notice was sent to Delta "Via Overnight Delivery." It was not served by personal service, registered mail, or certified mail.

27. The QE Lien Notice was addressed as follows:

> Kali Beyah
> Director-Assistant General Counsel
> Delta Air Lines Inc.
> 1030 Delta Boulevard
> Atlanta, GA  30320-6001

28. Ms. Beyah is not, and never has been, a member of Delta's board of directors.

29. Ms. Beyah is not, and never has been, Delta's designated agent for service of process in the state of Georgia or any other state, or a person authorized by Delta to accept service of process on behalf of Delta.

30. Prior to April 2017, Ms. Beyah was an Assistant General Counsel at Delta, handling litigation and regulatory and government affairs. For a time, Ms. Beyah was the attorney in Delta's litigation department who oversaw the law firm that was representing Delta in the Delta Litigation. In April 2017, Ms. Beyah left Delta's litigation department to became the Managing Director of Global Talent Management. She was not an Assistant General Counsel, was not in Delta's legal department, and was not overseeing Delta's litigation counsel when the QE Lien Notice was sent.

**The Debtor's Settlement with Delta in October 2018**

31. On or about October 11, 2018, the Debtor and Delta entered into a confidential *Settlement Agreement and Mutual Release* (the "Delta Settlement Agreement").

32. The Delta Settlement Agreement provided that Delta would pay the Debtor a certain amount (the "Settlement Amount"). The Settlement Amount was transferred into Quinn Emanuel's client trust account on or about November 13, 2018. These funds are referred to hereinafter as the "Delta Settlement Proceeds."

33. A stipulation for dismissal was filed in the Delta Litigation on November 26, 2018.

1571463.3  26891                           5

**The Distribution Agreement and Payment**

**of $6 Million to Quinn Emanuel**

34. On or about October 11, 2018, the Debtor entered into a *Distribution Agreement* (the "Distribution Agreement") with, among others, Quinn Emanuel.

35. The Distribution Agreement provided that if the Debtor reached an agreement with Delta for the Settlement Amount, the parties to the Distribution Agreement agreed to a distribution of the settlement proceeds on the terms set forth therein.

36. Quinn Emanuel was paid an aggregate of $6,000,000 of the Settlement Amount. The payments were made as follows:

    (a) On or about December 7, 2018, $5,750,000 was transferred from the client trust account to Quinn Emanuel. This transfer was made within 90 days prior to the Petition Date.

    (b) On or about January 18, 2019, $54,839.86 was transferred from the client trust account to Quinn Emanuel. This transfer was made between the Petition Date and the date on which the Order for Relief was entered.

    (c) On or about February 19, 2019, $195,160.14 was transferred from the client trust account to Quinn Emanuel. This transfer was made after the Order for Relief was entered.

37. Quinn Emanuel did not obtain relief from the automatic stay prior to making the $54,839.86 and $195,160.14 transfers from the client trust account to itself. It has not sought or otherwise obtained retroactive annulment of the automatic stay to validate the transfers.

38. No portion of the Settlement Amount was paid from Quinn Emanuel's client trust account to the Debtor or any creditor who was not a party to the Distribution Agreement.

**Payments Made to Quinn Emanuel from the Bentham**

**Proceeds from September 2018 through January 2019**

39. Although the Bentham Proceeds were deposited into Quinn Emanuel's client trust account on or about April 6, 2018, the Bentham Proceeds were not all disbursed to Quinn Emanuel at that time.

40. During the 90 days prior to the Petition Date, Bentham Proceeds were transferred from the client trust account to Quinn Emanuel in the following amounts:

    (a) $937.75 on or about September 20, 2018;

    (b) $16,360.50 on or about September 24, 2018;

    (c) $149,451.21 on or about September 27, 2018; and

    (d) $17,840.81 on or about December 7, 2018.

41. After the Petition Date, on or about January 18, 2019, the balance of the Bentham Proceeds – $129,630.19 – was transferred from the client trust account to Quinn Emanuel.

42. Quinn Emanuel did not obtain relief from the automatic stay prior to transferring $129,630.19 from the client trust account to itself. It has not sought or otherwise obtained retroactive annulment of the automatic stay to validate the transfer.

## CLAIMS AGAINST QUINN EMANUEL

### First Claim for Relief

(Declaratory Relief – QE Lien Notice)

(28 U.S.C. § 2201)

43. The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 42, inclusive.

44. An actual controversy exists between the Trustee and Quinn Emanuel regarding the validity and enforceability of the QE Lien Notice.

45. The state of Illinois' Attorneys Lien Act (770 ILCS 5/1) (the "Attorneys Lien Act") must be strictly construed. *People v. Philip Morris, Inc.*, 198 Ill.2d 87, 95 (2001). "Attorneys who do not strictly comply with the [Attorneys Lien] Act have no lien rights." *Id.*

46. To enforce a lien under the Attorneys Lien Act, an attorney must serve a written notice of its lien upon the party against whom a claim or cause of action is asserted. 770 ILCS 5/1. The notice must be served personally, by registered mail, or by certified mail. *Id.* The notice must be served on a person authorized by law to accept service of process.

47.  Quinn Emanuel did not comply with the Attorneys Lien Act in at least the following ways:

(a) The QE Lien Notice was addressed to Kali Beyah, who was identified in the QE Lien Notice as "Director-Assistant General Counsel" for Delta.  When the QE Lien Notice was sent by Quinn Emanuel to Delta, Ms. Beyah was not an assistant general counsel for Delta, was not working in Delta's litigation department, and was not overseeing the Delta Litigation.

(b) Even if Ms. Beyah held the position of Assistant General Counsel when the QE Lien Notice was sent, Ms. Beyah was not an authorized agent for service of process or a person on whom applicable law permitted Quinn Emanuel to effectuate service on Delta.

(c) The QE Lien Notice was sent to Delta by "Overnight Delivery" instead of by personal service, registered mail, or certified mail.

48.  The Trustee contends that the QE Lien Notice was invalid and unenforceable because Quinn Emanuel did not strictly comply with the Attorneys Lien Act.  Accordingly, the Trustee contends that Quinn Emanuel's claim against the Debtor was at all times unsecured, and that any claim that Quinn Emanuel has, or may have, against the Debtor's estate is a general unsecured claim.

49.  A judicial determination is necessary and appropriate at this time so that the rights and interests of the Trustee and Quinn Emanuel may be determined.

**Second Claim for Relief**

(Avoidance and Recovery of Preferential Transfer)

(11 U.S.C. §§ 547 and 550)

50.  The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 42, and 44 through 48, inclusive.

51.  The transfer identified in paragraph 36(a) was a transfer of an interest of the Debtor in property.

52.  The transfer identified in paragraph 36(a) was made to or for the benefit of a creditor.

53. The transfer identified in paragraph 36(a) was made for or on account of an antecedent debt owed by the Debtor before such transfer was made.

54. The transfer identified in paragraph 36(a) was made while the Debtor was insolvent.

55. The transfer identified in paragraph 36(a) was made within 90 days before the Petition Date.

56. The transfer identified in paragraph 36(a) enabled Quinn Emanuel to receive more than it would receive if the transfer had not been made and Quinn Emanuel received payment of such debt to the extent provided by the Code.

57. Quinn Emanuel is the initial transferee of the transfer identified in paragraph 36(a).

58. Pursuant to 11 U.S.C. §§ 547 and 550, the Trustee is entitled to avoid the transfer identified in paragraph 36(a) and recover the sum of $5,750,000 from Quinn Emanuel.

**Third Claim for Relief**

(Avoidance and Recovery of Preferential Transfers)

(11 U.S.C. §§ 547 and 550)

59. The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 42, and 44 through 48, inclusive.

60. Each transfer identified in paragraph 40 constituted a transfer of an interest of the Debtor in property.

61. Each transfer identified in paragraph 40 was made to or for the benefit of a creditor.

62. Each transfer identified in paragraph 40 was made for or on account of an antecedent debt owed by the Debtor before such transfer was made.

63. Each transfer identified in paragraph 40 was made while the Debtor was insolvent.

64. Each transfer identified in paragraph 40 was made within 90 days before the date of the filing of the Petition.

65. Each transfer identified in paragraph 40 enabled Quinn Emanuel to receive more than it would receive if the transfer had not been made and Quinn Emanuel received payment of such debt to the extent provided by the Code.

66. Quinn Emanuel is the initial transferee of each transfer identified in paragraph 40.

67. Pursuant to 11 U.S.C. §§ 547 and 550, the Trustee is entitled to avoid the transfers identified in paragraph 40 and recover the sum of $184,590.27 from Quinn Emanuel.

**Fourth Claim for Relief**

(Avoidance and Recovery of Postpetition Transfers)

(11 U.S.C. §§ 549 and 550)

68. The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 42, and 44 through 48, inclusive.

69. On the Petition Date, Quinn Emanuel was holding $379,630.19 in its client trust account for the benefit of the Debtor.

70. Pursuant to 11 U.S.C. § 541(a), the funds constituted property of the Debtor's estate.

71. After the Petition Date, $379,630.19 was transferred from the Client Trust Account to Quinn Emanuel (the "Postpetition Transfers").

72. The Postpetition Transfers were made to satisfy a debt that arose before the commencement of the Debtor's case.

73. The Postpetition Transfers were not authorized under title 11 of the United States Code or by the Court.

74. Quinn Emanuel is the initial transferee of the Postpetition Transfers.

75. Pursuant to 11 U.S.C. §§ 549 and 550, the Trustee is entitled to avoid the Postpetition Transfers and recover the sum of $379,630.19 from Quinn Emanuel.

**PRAYER**

WHEREFORE, the Trustee prays for the following relief:

**On the First Claim for Relief:**

1. For a declaration that the QE Lien Notice was not served by Quinn Emanuel in accordance with the Attorneys Lien Act;

    2.    For a declaration that the QE Lien Notice was invalid and unenforceable;

    3.    For a declaration that Quinn Emanuel's claim against the Debtor for services rendered in connection with the Delta Litigation was, at all times, unsecured; and

    4.    For a declaration that any claim that Quinn Emanuel has, or may have, against the estate is a general unsecured claim.

**On the Second Claim for Relief:**

    1.    For avoidance of the transfer identified in paragraph 36(a);

    2.    For a money judgment against Quinn Emanuel in the amount of $5,750,000; and

    3.    For an award of interest at the legal rate on all sums awarded from the date of the filing of the complaint.

**On the Third Claim for Relief:**

    1.    For avoidance of the transfers identified in paragraph 40;

    2.    For a money judgment against Quinn Emanuel in the amount of $184,590.27; and

    3.    For an award of interest at the legal rate on all sums awarded from the date of the filing of the complaint.

**On the Fourth Claim for Relief:**

    1.    For avoidance of the Postpetition Transfers;

    2.    For a money judgment against Quinn Emanuel in the amount of $379,630.19; and

    3.    For an award of interest at the legal rate on all sums awarded from the date of the filing of the complaint.

///

///

///

///

///

**On all Claims for Reliefs:**

    1.    For costs of suit incurred; and

    2.    For such other relief as the Court deems just and proper.

DATED: February 17, 2020        DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:   */s/ John N. Tedford, IV*
      JOHN N. TEDFORD, IV
      Attorneys for Plaintiff Jerry Namba,
      Chapter 7 Trustee